**TENNEY TELEPHONE CO. v. UNITED STATES.**

**No. 5604.**

Circuit Court of Appeals, Seventh Circuit.

March 13, 1936.

I. H. Hale, of La Crosse, Wis., for appellant.

Arne C. Wiprud, of Minneapolis, Minn., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

This proceeding was begun by the United States of America (hereinafter referred to as the Government) for the purpose of condemning certain lands and easements in Buffalo county, Wis., to be used in the construction, maintenance, and operation of what is commonly known as Lock and Dam No. 4 in the Mississippi river. It is the intention and purpose of the Government to maintain at all times in the river at that place a nine-foot navigation channel, which calls for a flowage easement up to an elevation of 667 feet above the mean sea level datum, over, across, and through the property in question, as well as other property described in the condemnation petition. Commissioners were regularly appointed for the purpose of awarding damages to any landowner, and the owner of any easement or any property right thereby affected. Damages in the sum of $1,590 were awarded by such Commissioners to the appellant telephone company for the taking of an easement or property right which it asserted over certain lands taken by the Government in this proceeding. The Government appealed from such

award to the District Court. A jury was waived, and the court filed special findings of fact from which it concluded "that the respondent's claim for compensation in these proceedings be and it is hereby disallowed, without costs." Judgment was accordingly entered, and the telephone company is now prosecuting this appeal.

There was entered into by and between the parties a stipulation as to certain facts, at the conclusion of which Mr. Gleason, attorney for appellant, stated, "I take it then, Mr. Wiprud, that under our stipulation that the only question involved in the case is the establishment of our property rights, and if we establish them, we are entitled to the $1590.00, and if we fail we are not." To which Mr. Wiprud, attorney for the Government, responded, "That is correct." The stipulation also provides that the sum of $1,590 is just compensation for the easement taken. By this stipulation the Government admits the existence of an easement, the value of which is not in dispute. The easement extends over the lands, the fee of which was owned by the persons named as grantors in the instruments executed to appellant prior to the time of its entry upon such lands. The question, therefore, for determination is whether or not appellant has a property right in the easement appropriated by the Government in this proceeding for which it is entitled to just compensation; if so, it is entitled to $1,590; if not, it is entitled to nothing.

A farmers' co-operative telephone company was originally organized more than thirty years ago for the purpose of supplying telephone communication between the subscribers for their mutual convenience and benefit. Poles were furnished by the farmers and much work in the construction of the line was originally done by them. About thirty years ago a corporation was organized, and a great deal of the stock was subscribed for and is now owned by the persons who constructed the original line. That corporation is still in existence and is the appellant in this case. The owners of the land on which the poles were placed, and over which the wires extended, gave their permission for the construction of the line, in writing, to the company, before such construction was commenced. A written form was prepared by a lawyer, and all permits were on the same form. The following permit was executed by one of the land owners over whose land a telephone line was afterwards

constructed, and is a part of the easement in question:

"This indenture, made the *11th* day of *June,* A. D. 19*07,* between *Edward Truempler* of the town of *Alma* in the county of Buffalo, in the state of Wisconsin, party of the first part, and The Tenney Telephone Company, a corporation duly organized under the laws of the state of Wisconsin, party of the second part,

"Witnesseth, that in consideration of the sum of one dollar, now paid to the said party of the first part by the party of the second part, the receipt whereof is hereby confessed and acknowledged, the said party of the first part hereby grants and conveys unto the said party of the second part and to its assigns and legal representatives and to its agents and servants full and free right and privilege, from time to time hereafter at its and their will and pleasure to go, return, pass and repass over the lines hereinafter described and to erect and maintain upon said lands telephone poles and string wires thereon for the purpose of operating and maintaining over said lands a line of telephone communication where said telephone line and poles are now, or hereafter may be located over said lands.

"The lands of the said parties of the first part above referred to are situated in Buffalo County, Wisconsin, and are described as follows: *East half of the South West quarter, Sect. 25, Town 22, Range 13 West.*

"In Witness Whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written.

   "Edward Truempler [Seal.]
   "――――――― [Seal.]
"In presence of Peter Wold."

(The italicized portion of the above represents handwritten insertions in an otherwise printed form.)

A similar instrument was executed by Fred Gleiter, of Alma, Buffalo county, Wis., a landowner over whose land a telephone line was afterwards constructed, and is a part of the easement in question. This instrument was executed on the 4th day of September, 1906, and was witnessed by John Accola. These instruments were neither acknowledged nor recorded in the office of the register of deeds of Buffalo county, Wis.

At the time of the trial, the two aforementioned instruments were all that were

produced, although the testimony of Dr. J. S. Tenney, the original promoter of the telephone company, discloses the fact that similar instruments were executed by all landowners over whose land the telephone line extends and delivered to appellant before such line was constructed. About 106 permits for the use of land by appellant, similar in character to those above mentioned, are in the possession of appellant, but which land, with the exception of that described in the aforementioned permits, is not involved in this proceeding. The telephone line in question, and the land upon which the poles are located, have been in possession of appellant for practically thirty years last past, and its right to enter thereon, repair, replace its poles, and maintain its lines, has never been questioned. In other words the owners of the fee of the land over which appellant's lines extend, and all other persons, have, for thirty years or more, recognized and respected the rights of appellant to maintain an easement over such lands for the purpose set forth in the written instruments executed between the owners of the fee and appellant many years ago.

It is conceded by appellant that the instruments purporting to convey an easement over the lands described in the petition for condemnation were witnessed by one person only, and that they were neither acknowledged nor recorded. A statute in the state of Wisconsin provides that "All conveyances executed within this state, of lands or any interest in lands therein, shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such." Section 235.19, Stat.Wis. 1933. While not all of the instruments affecting the easement in question were produced at the trial, yet, the evidence is sufficient to justify the conclusion that instruments similar in character to the ones produced were executed by all landowners affected. Acting under authority of these grants, appellant took possession, constructed its telephone lines, and has since maintained them. It is the contention of the Government that appellant has no legal easement over the land in question, and is, therefore, entitled to no valid claim for compensation, even though such easement is taken by it, and the District Court so found. Appellant contends, however, that it has a valid easement as between it and its grantors, although defectively executed, and that the Government, in taking that easement, must pay for it, even though it may not have a merchantable title thereto.

That the written instruments purporting to convey an easement to appellant did not comply with the Wisconsin statute in so far as their execution is concerned, there can be no doubt. They were neither witnessed by two persons, acknowledged, nor recorded. However, such instruments were valid as between the grantors and appellant. It is well settled by the law of Wisconsin that a written instrument may convey a valid title as between the grantor and grantee, even though it is not witnessed or acknowledged, as required by statute, and has not been placed of record. In the case of Harrass v. Edwards et al., 94 Wis. 459, 69 N.W. 69, 71, the court said: "In order to be entitled to be legally recorded, it was necessary that the deed should have been both witnessed and acknowledged as prescribed by statute. Rev. St. §§ 2216, 2218. It may, in fact, have been executed by all the grantors, so as to pass the legal title as between them and the grantee, for witnessing and acknowledgment are not essential to the sufficiency of a deed as between the parties thereto." In discussing the question of whether or not it is necessary to comply with the Wisconsin statutes as to witnessing, acknowledging, and recording of instruments of conveyance in order that title may pass, the Supreme Court said: "The question is hardly an open one in this court. In Myrick v. McMillan, 13 Wis. 188, * * * it was held that an acknowledgment of a deed by the grantor was not essential to pass the legal title as between the parties to the instrument. * * * Attestation and acknowledgment are formalities required by the statute to entitle the deed to be recorded, so as to operate as notice to subsequent purchasers, but are not essential to transfer the title as between the parties." Leinenkugel v. Kehl et al., 73 Wis. 238, 40 N.W. 683, 684. See, also, Gilbert et al. v. Jess, 31 Wis. 110; Slaughter v. Bernards, 88 Wis. 111, 59 N.W. 576; Herren et al. v. Strong, 62 Wis. 223, 22 N.W. 408; Welsh et al. v. Blackburn, 92 Wis. 562, 66 N.W. 528.

It is apparent, therefore, that the instruments executed by the grantors conveyed a legal title to the easement therein described as between such grantors and appellant, even though such instruments were not witnessed, as required by the statute, acknowledged, or recorded. Hav-

ing reached this conclusion, it becomes necessary to determine whether or not the Government can, under the Fifth Amendment to the Constitution of the United States, take from appellant this easement or property right, even though it may not have a merchantable title thereto, without justly compensating it therefor.

At the time condemnation proceedings were begun by the Government, it knew that appellant was the owner of, and in the possession of the telephone line extending upon and over a part of the land which it desired to acquire by such proceedings. Because of the fact that it knew that appellant claimed a property right or an easement over a part of the land sought to be condemned, it was made a party to the condemnation proceedings. Appellant has held itself out to the world as the owner of an easement over such land for more than a quarter of a century. Having acquired a valid property right as between itself and the grantor, it immediately took possession thereof, constructed its telephone line, and in this manner gave notice to the world that it claimed an easement over the land in question. It is true that it does not possess a record title to the easement for which it can convey a merchantable title to a prospective purchaser. If it had a private purchaser, it might perfect its title in court or otherwise, so as to satisfy such purchaser. The Government, by these proceedings, has condemned and taken the fee of the land over which the easement in question extends. It did not and could not pay the fee owners for the easement, because they did not own it. They had long ago parted with the title to such easement by instruments which conveyed a valid title as between them and the telephone company, although defectively executed. Such easement is the private property of appellant, as between it and its grantors, and no person, other than appellant, is asserting any interest therein. Therefore, it is clear that the Government did not compensate the fee owners for the easement at the time it acquired their lands. It is equally clear, under the Constitution, that the Government cannot take private property for public use without just compensation. It cannot be disputed that the easement in question is private property and that the Government has exercised its rights under the law and taken such property. In so far as disclosed by the evidence, it has compensated no one for such property thus taken. Is it possible

that the Government can take this easement (private property) of the stipulated value of $1,590 without paying just compensation therefor, simply because there may be a defect in the title of the one asserting ownership thereto? We do not think so.

This is not a case in which a purchaser is seeking to recover from the grantor because of a defective title. Neither is it a case in which an owner is seeking specific performance upon the part of a purchaser where the owner is unable to give merchantable title. It is a case in which the Government has taken a property right and seeks to escape payment therefor, because the owner of such right may have a defective title. The Government has no paramount title to the easement, and is not in position to dispute the title of appellant in a condemnation proceeding. It is a general principle of law, as enunciated by Mills on Eminent Domain (2d Ed.) § 161, "The condemning party cannot dispute the title of the party in possession against whom proceedings have been instituted unless such party has acquired a paramount title." See Ketchum Coal Co. v. District Court, 48 Utah, 342, 159 P. 737, 4 A.L.R. 619. "The term 'owner' includes all persons who have an interest in the property." Mills on Eminent Domain, § 65. See, also, Gerrard v. Omaha R. Co., 14 Neb. 270, 15 N.W. 231; Dietrichs v. Lincoln R. R., 14 Neb. 355, 15 N.W. 728; Tompkins v. Augusta R. Co., 21 S.C. 420.

In the case of St. Louis & S. E. Ry. Co. v. Jacob Teters, 68 Ill. 144, where the railroad company was seeking to condemn land for a right of way, the court said: "Again, it is urged, that the appellee was not entitled to damages because he failed to prove title to the land sought to be appropriated. This objection would amount to this: that, on the person, against whom the proceeding is commenced, failing to establish title, the company has the right to appropriate it without compensation. To so hold, would be monstrous. The company started the proceeding against the appellee, and thus admit that he is the owner. If not the owner, why make him defendant? Why not proceed against the owner? Here we find appellee was in the full and uninterrupted possession of the land, and the law, from that fact, presumes he is the owner; and if not, let the company proceed against the true owner. The record of titles is open to them, and they can determine against whom to pro-

ceed. But we could never hold that a person in possession should lose his land and receive no compensation because there might be some trifling technical objection to some deed or acknowledgment in his chain of title; and this, too, when he has neither sought nor encouraged the litigation. The proceeding is moved by the company for their benefit, and not for that of appellee."

Appellant is the owner of a property right in the land appropriated by the Government in this proceeding and must be justly compensated therefor. The value of such property right is not in dispute. The judgment of the District Court is therefore reversed, and the cause remanded.